## MAY TERM, 1769.

### BELT et ux. *vs.* HEPBURN.

DEBT on a writing obligatory, bearing date on the 28th day of November 1745, executed by *George Gordon,*

*John Hepburn,* (the defendant,) *Henry Darnall,* and *John Cooke,* to *Mary Gordon,* conditioned, "that whereas the "honourable commissary general has lately transmitted "to the justices of Prince-George's county court, the ba- "lance remaining due on the estate of *George Forbes,* de- "ceased, which appears to be 393*l.* 9*s.* 1*d.* sterling, 11*l.* 8*s.* "0*d.* gold, and 991*l.* 13*s.* 1*d.* current money; if therefore "the above bound *George Gordon,* or any person on his "behalf, shall and do, well and truly, satisfy and pay "unto the said orphan, namely *Mary Gordon,* her heirs, "&c. or lawful guardian or guardians, her respective part "or portion of the estate of the said deceased, according "to the act of assembly in such cases late made and pro- "vided, and his last will and testament, that then the "above obligation to be void," &c.

The defendant, being one of the justices of the pro-vincial court, a bill was exhibited against him on the 27th of May 1767.

PLEAS. 1. *Non est factum.* 2. *Payment by George Gordon.* 3. *The act of limitations,* viz. "That the writ-ing obligatory shall not be good and pleadable, or ad-mitted in evidence against him the said *John,* because he saith, that the said debt or thing in action, for which the said *Tobias* and *Mary* have filed their bill in this honour-able court as aforesaid, was above twelve years standing on the day of the filing the said bill of the said T. & M. and this," &c.

4th. *The act of limitations,* viz. "That the said T. & M. their action aforesaid against him the said J. to have or maintain ought not, because he saith, that the said T. & M. did file their bill in the action aforesaid on the 19th day of May 1767, and not before; and that twelve years and more have elapsed and expired from the day of the date of the said writing obligatory, in the declaration aforesaid mentioned, until the day of the filing the bill aforesaid, to wit, at Prince-George's county aforesaid, and this," &c.

REPLICATIONS. 1. *Issue* to the first plea. 2. *Non payment* and *issue.* 3. *Infancy* and *coverture,* viz. "That she the same *Mary,* at the aforesaid time of making the writing obligatory aforesaid, was an infant within the age of 21 years, to wit, of the age of 12 years, and no more, at Prince-George's county; and that in the time of the infancy of her the same *Mary,* and before she arrived to her age of 21 years, she the same *Mary* on the 10th day of June 1752, at Prince-George's county aforesaid, took to husband the aforesaid *Tobias,* of whom she hath ever since remained covert, to wit, at the same county; and this," &c.

4th. Same replication of *infancy* and *coverture.*

MAY 1769.

Belt
vs.
Hepburn.

GENERAL DEMURRER to the 3d *Replication,* and JOINDER. REJOINDER to the 4th *Replication,* "That the said *Mary* arrived to the age of 21 years before her inter-marriage with the said *Tobias,* to wit, on the 1st day of June 1752, at the county aforesaid." *Issue* joined.

VERDICTS for the plaintiffs upon all the issues in fact.

*Chase,* for the plaintiffs, upon the demurrer. This is an action of debt on a bond to *Mary Gordon,* the plaintiff's wife, an infant, dated 8th of November 1745, under the act of assembly in 1715, *ch.* 39, *s.* 7, 15. The bill was filed on the 19th of May 1767. The defendant pleaded the *act of limitations* two ways—

1. Agreeably to the act of 1715, *ch.* 23, *s.* 6.

2. "That the plaintiff's bill was filed the 19th of May 1767, and not before; and that 12 years and more elapsed from the day of the date of the bond, until the day of filing the bill."

The plaintiffs reply, that the plaintiff *Mary,* at the time of the bond, was an *infant,* to wit, *of the age of* 12 *years,* and no more; that *in the time of her infancy, and before she arrived to the age of* 21 *years,* on the 10th of June 1752, at Prince-George's county, she took to husband the aforesaid *Tobias, of whom she hath ever since remained covert.* to wit, at the same county; and this they are ready, &c.

The defendant has demurred generally.

It may be contended on the part of the defendant—

1. That the replication is double—*Styles,* 320. *Vin. Ab. tit. Limitations,* 111. 4 *Bac. Ab.* 118, 119, 120, 121, See 12 *Mod.* 526. 8 *Mod.* 180.

2. That the plaintiffs are barred by the act of limitations, because 12 years have elapsed from the marriage in 1752 until bill filed in 1767. That *Belt* by his marriage in 1752, was entitled, *in right of his wife,* to the bond, and that he might *receive, release,* or sue for recovery; that he having a complete cause of action in 1752, and neglecting to sue in 14 years, is barred by the act of limitations, and that his laches shall prejudice his wife.

The demurrer admits the fact, and refers the law arising on the fact to the judgment of the court.

It may be compared to the case where a fine and non claim of the wife's land shall bar the husband, (who suffered five years to pass,) and *the wife during her coverture. Cro. Car.* 200. 1 *Jones,* 195. *Danvers Ab.* 520, *pl.* 12. See 1 *Bac. Ab.* 301. *Bar & Fem.* 136.

The reason why *feme covert* bound by a fine—*Bar. & Fem.* 125. 1 *Bac. Ab.* 301. A fine levied by a *feme covert,* as a *feme sole,* binds her and her heirs, unless avoided by the entry of the husband.—*Lill. Conv.* 194.

*Bar. & Fem.* 126. But she cannot—4 *Vin. Ab.* 62, *pl.* 1, 2. If baron alone aliens the land of the wife by fine and proclamation, and dies, and five years expire after his death without action or entry of the wife, it is a bar for ever to the wife and her heirs.—4 *Vin.* 56, *pl.* 11. If *baron* and *feme* levy a fine, the *feme* within age, the whole fine shall be reversed, and not only *quoad uxorem* —*Bar. & Fem.* 131, 132. *Styles,* 472. If an executor, administrator, or trustee for an *infant,* neglects to sue within six years, the statute of limitations shall bind the infant—1 *P. Wms.* 309. In this case the infant was not within the exceptions of the statute; nor was it so contended as to the definition of a trust—2 *Atk.* 612.

All personal estate is vested in the husband by marriage, and he may dispose of it, in his lifetime, without her consent.—1 *Bac. Ab.* 289. If bond is made to a *feme covert, during coverture,* conditioned to pay money to the *feme, baron* alone may bring action upon such bond.—1 *Bac. Ab.* 305. Cites 3 *Lev.* 403. *Vin. tit. Baron & Feme,* 75, *pl.* 33. If a bond is entered into to *baron* and *feme, baron* may sue alone.—1 *Bac. Ab.* 305. *Bar. & Fem.* 255. 2 *Mod.* 217. *Vin. tit. Bar. & Fem.* 75, *pl.* 32. For all causes of action *before coverture,* husband must join.—1 *Bac. Ab.* 306. And also in those cases where the cause of action will survive to the wife.—1 *Bac. Ab.* 304. *Bar. & Fem.* 244, 5. Cites *Sid.* 299. *Bar. & Fem.* 253. 4. 2 *Mod.* 269. *Vin. tit. Bar. & Fem.* 79, *pl.* 30; 76, *pl.* 3; 73, *pl.* 22. 1 *Stra.* 229. *Owen,* 82. A bond to the wife is good, and husband may release it, and if husband dies the wife shall have the action, if the husband has not released.—4 *Vin.* 84, *pl.* 17.

I shall contend for the plaintiffs, that a chose in action, as a debt due to the wife by obligation, is so far vested in the husband, that he may reduce it into possession; yet if he dies *before,* the wife shall be entitled; nor shall a chose in action survive to the husband upon the death of the wife; nor shall he have any right but as administrator to his wife.—1 *Bac. Ab.* 289. *Co. Lit.* 351, 120, *(in note.) Vin. Ab.* 55, *pl.* 23, 44, *pl.* 14. *Styles,* 205. 3 *Mod.* 186. *Finch,* 31. What laches shall prejudice the wife—*Co. Lit.* 246, *s.* 403. A bill of exchange made to wife, *dum sola,* husband may assign it, and assignee shall bring action in his own name—1 *P. Wms.* 249. 10 *Mod.* 246. *Vin. tit. Baron and Feme,* 57, *pl.* 18. Husband may release or receive a chose in action—*Vin. tit. Bar. and Feme,* 39, *pl.* 5, 6, 7; 44, *pl.* 14. *Chan. Pre.* 414. *Mod.* 452. 1 *Bac. Ab.* 289. *Poph.* 106. *Vin. lit. Bar and Feme,* 47, *pl.* 30, 50; *pl.* 19, 20; 53, *pl.* 7; 55, *pl.* 23. 1 *Salk.* 327. 3 *Mod.* 186. Also to a thing accrued during coverture—1 *Bac. Ab.* 290. A receipt *by*

MAY 1769.

Belt
vs.
Hepburn.

*wife alone*, for a legacy bequeathed to her, is not a suf-ficient discharge against the husband—*Vin. tit. Bar. and Feme*, 60, *pl.* 16. *Vern.* 261. *Comyns*, 725, *pl.* 280. Infants should sue within the time allowed by the statute after the impediment removed—2 *Bac. Ab.* 127 See 2 *Mod.* 71. If a husband assigns a bond of his wife's for a valuable consideration, this assignment will not bind the wife, if she survives—*Chan. Pre.* 121, 518. *Gilb. Eq.* 103, 415, 100. *Chan. Rep.* 124. *Cha. Ca.* 27. 2 *Freem.* 172, *pl.* 223. *Poph.* 106. 3 *P. Wms.* 87, 197. If she survives she may maintain the action, *ergo*, this may be supported, for a *personal action* once suspended can never be revived—*Hob.* 10. *Finch*, 29, 300. If an *infant, during his infancy*, by guardian brings an action, the defendant cannot plead the statute of limitations, *although the cause of action accrued six years before*—3 *Bac. Ab.* 513. Cites 2 *Saund.* 121. *English*, 110, 111, 1 *Sid.* 453. 2 *Keb.* 646. Bar is when the defendant, in any action, pleads a plea, which is a sufficient answer, and destroys the action of the plaintiff for ever—*Lilly Ab.* 298. Once a bar, in a personal action, is a bar per-petual, *when a bar to the right*, not where action is mis-conceived, or brought wrong—*Cro. Jac.* 15, *pl.* 20. *Cro. Eliz.* 668. 6 *Rep.* 5, 7. 2 *Show.* 211. *Raym.* 472. *Skinner*, 48, 9, 57. 1 *Mod.* 207. 3 *Mod.* 1. 2 *Mod.* 318. *Pol.* 634. *Gilb. Ev.* 267. *Vin. Ab. tit. Baron*, 18, 25, *pl.* 12; 31, *pl.* 1. 6 *Rep.* 46, *a.*

It is a general rule, that a judgment on demurrer is as conclusive and binding as if the same had been after verdict, &c—4 *Bac. Ab.* 132. Cites 11 *Co.* 58. 2 *Roll. Ab.* 89. 1 *Ray.* 515. *Salk.* 325.

As to the nature of coverture—*Bar. and Fem.* 3, 4. Wherein a *feme covert* and an infant differ—*id.* 4. Privileges of a *feme covert*—*id.* 24, 25. A fine is an agree-ment of the parties on record—a conveyance is of greater security than a feoffment, &c.—2 *Bac. Ab.* 520. A fine by an infant is voidable during his minority; and same by a *feme covert*—*id.* 526, 527. A deed of a *feme covert*, with her husband, is void—9 *Vin.* 407. *Gilb. Evid.* 165. An infant may contract for necessaries; may pur-chase, and a promise to an infant is binding—3 *Bac.* 129, 141. But a promise to a *feme covert* is not binding —*Bac.* 297. If an express promise to *feme covert*, hus-band to sue with his wife— 1 *Bac.* 305. A wife's con-tract, during coverture, to bind the personal estate of her husband, in which she hath no property, is void; to bind her own land, in which she hath property, is voida-ble and not void—*Gil. Evid.* 211. *Bar. and Fem.* 4.

*Rogers*, for the defendant. The bond upon which this action is brought, is dated the 28th of November 1745.

The bill was filed against the defendant the 27th of May 1767, so that upwards of twenty years elapsed from the date of the bond to the filing of the bill. In the other action against *John Cooke*, another of the securities, the writ issued on the 1st of October 1766, and 20 years and near 10 months had elapsed before that writ issued.— *Mary* was 12 years of age on the 28th of November 1745, so that on the 10th of June 1752, when she married *Belt*, she was 18 years, 6 months and 10 days old; and upwards of 14 years between her marriage with *Belt* and issuing the writ on the 1st of October 1766. *Mary* was 21 years of age on the 28th of November 1754, 12 years *not* elapsed from that time to the 1st of October 1766.

The question is, are the plaintiffs barred by the act of limitations of 1715, *ch.* 23, *s.* 6, notwithstanding the matter set up by them in avoidance? for if that matter does not excuse, it is a proper subject of a demurrer.

The more particular questions are—

1st. Whether the cause of action arose to *Mary* at her age of 16; if it did, whether the statute runs from that age or her age of 21; if from 16, the statute is a flat bar?

2d. Whether the cause of action arose to *Tobias* at his marriage; and if it did, whether the statute shall run against him and wife from that time notwithstanding the covert of *Mary* in whose right he claims?

As to the *first question.* Females are to be paid at 16, or day of marriage, which shall first happen. Act of 1715, *ch.* 39, *s.* 15.

As to the *second question.* By the intermarriage the husband acquires an absolute power of disposing of the wife's personal property—1 *Bar.* 286.

The goods in *possession,* (at the marriage,) of the *feme,* are absolutely vested in the husband—1 *Bar.* 289, 290. *Co. Lit.* 351. *b.* *Things in action,* as debts due to the wife by obligation, &c. are so far vested, that the husband *may* reduce them into possession at his pleasure—1 *Bar.* 289, 290. *Co. Lit.* 351. *Doct. & Stud. ch.* 7. *Roll. Ab.* 342. *Moor,* 45, 452, 229. Things in action are so far vested that he may assign them—1 *P. Wms.* 249. He may release them or give them away; they shall be assigned on his bankruptcy—1 *P. Wms.* 249. A small matter reduces them into possession, as if he makes a letter of attorney and he receives them, and the *feme* dies, the husband shall have an action of account against his attorney, for his receipt reduces them into the possession of the husband— 1 *Bar.* 289. *Roll. Ab.* 342. *Moor,* 45. *Golds.* 160. Whereover the plaintiff has a complete cause of action the statute will run, if no impediment to bringing the suit—3 *Bar.* 511. *Godb.* 437. 2 *Salk.* 422. *pl.* 9. 2 *Raym.* 838. 1 *Bar.* 279, 290. 1 *Vern.* 261. *Moore,* 229, 452. 1

*Salk.* 115, 118. 2 *Roll.* 495. 4 *Vin.* 105, *pl.* 4. If the statute is no bar in this case all the inconveniencies the law intended to prevent would be let in. The husband was under no disability or impediment in this case, and is therefore barred by the act of 1715, *ch.* 23, *s.* 6. Infant barred, because the administrator had a right to sue, but forbore to do so—3 *P. Wms.* 309. The statute of limitations is one of the best statutes—7 *Mod.* 12. There is no case where the coverture of the wife will excuse the negligence of the husband. If a husband and wife have right of entry into land whereof another is seised in fee tail, &c. and such tenant died seised, the entry of the husband is taken away; but if the wife survives she may enter—*Co. Lit.* 246. *a.* But if a *feme sole* is disseised of land and taketh a husband, the husband and wife may enter, yet if disseisor dies seised, the right of entry of the wife is taken away after the death of the husband, because she might have entered before coverture, and it was her folly that she took a husband that would not enter; but if in the last case she was an infant, she may enter after the death of her husband—*Co. Lit.* 246. *b.* A. seised in fee devises to B. an infant, in fee—C. the heir of A. enters and levies a fine with proclamation in the infancy of B. B. dies an infant, leaving his sister the wife of D. his heir; five years elapse; D. the husband is barred notwithstanding the covert of his wife; but the wife shall have new five years after the death of the husband—*Cro. Car.* 200.

The plaintiffs can only argue upon a supposition that the cause of action and debt itself will survive to the *feme;* and it will be said, that if it will so survive, the statute can be no bar in this case, because that would be a temporary suspension of the action, which, *according to the legal rule, that a personal action once suspended, is extinct, and gone for ever;* and therefore the *feme,* if she should survive, would by that rule be barred for ever. In answer to this, I allege that the above rule is not an universal one; there are many cases where a suspension is no extinguishment of a personal action. If the obligee makes the obligor his executor, this is a *suspension* of the action, (and an extinguishment of the debt if assets to pay creditors,) because the obligor cannot sue himself, and the same person who is to pay is to receive; but it is not an extinguishment if no assets besides to pay debts; but suppose the executrix of the obligee marries the obligor, this is *only a suspension,* and upon the death of the executrix the administrator *de bonis non* may bring suit on the bond. Suppose administration of the goods of the obligee are committed to the obligor, this is only a temporary suspension of the action, and the admi-

ministrator *de bonis non* of the obligee may sue the executor or administrator of the obligor. A difference may be taken between suspensions which are occasioned by act of law, and the act of the party. Is the present case a suspension by act of law or the act of the party? It is a suspension by act of law, and not of the party, with respect to the *feme*, because the law will not impute negligence to her, (she being an infant and *feme covert*,) to deprive her of her right; and therefore may well be a suspension without an extinguishment—*Salk.* 299. 3 *Bacon,* 379, tit. *Executors and Administrators.* Suppose it the act of the party, (viz. the husband,) his act will not prejudice the wife, because she could not sue, as in the case of the marriage, by executrix of obligee with the obligor.

The cases relative to the real estate of the wife apply in this case, for if the husband by his negligence is barred of his wife's inheritance, when his power over it is very small, and of which he cannot dispose but for a time without her consent, much stronger is the reason that she shall be barred of her personal estate over which he has the absolute power of disposition.

*Jennings,* (Attorney General,) also for the defendant. The question is, whether the matter disclosed in the replication is sufficient to avoid the act of limitations?

We contend, that the plaintiffs, having suffered upwards of 12 years to elapse since the coverture, are barred of their suit.

How far the wife may have a remedy in case of survivorship, is not now the question; therefore, whether this neglect of the husband shall affect the wife is immaterial, and the sole consideration is whether it shall not preclude him.

By the act of assembly, all suits on bonds are to be brought within 12 years after cause of action accrued, unless party labours under the disability in the proviso of the act; therefore it is proper to consider when this cause of action first accrued to the husband, for it not being alleged, cannot be supposed he laboured under any of the impediments mentioned.

By the intermarriage, a man is immediately vested solely with the personal property of his wife; he is seised of an estate during the coverture in her lands of inheritance; he is entitled to her chattels real, and things in action; but if the wife survived, and they are undisposed, she shall have them. Of the last kind of interest is the matter now in controversy, and the others are no other ways material to be remembered than as they may tend to explain some authorities that may be produced.

This obligation, made to the *feme* when sole, was at the time of her intermarriage a thing in action, and agreeable to what has been premised, the husband had immediately a power of reducing it into possession by suit; therefore the cause of action then accrued, consequently 12 years having elapsed since such cause of action accrued, he is barred by the express words of the act of assembly.

This point being determinable under a positive law of our own, might be very well settled by only adverting to the particular expressions in the act, which are plain and explicit, that the suit must be brought within 12 years from the time the cause of action accrued. Here a cause of action accrued on the intermarriage of the plaintiff. It does not appear that he was under the disabilities mentioned, at the time the cause of action accrued; and this suit not being brought within 12 years from the time such cause of action accrued, therefore plaintiffs are barred.

The principle then laid down is, that a husband having an interest in his wife's property, may defeat that interest, and deprive himself of any advantage from it. And here it is proper again to observe, that we say nothing about its depriving the wife, it being totally foreign to the present question, which is how far the husband's laches shall bind himself, and not how far they shall bind his wife after his death. To establish which, I will shew that the husband's delinquency shall in many instances bind his wife, but shall always bind him —*Baron and Feme*, 75, *pl.* 1, 2, 3, 76. *Co. Lit.* 351, *a.* 4 *Vin. tit. Baron and Feme*, 104, *pl.* 1. 2 *P. Wms.* 608. 3 *P. Wms.* 309. *Co. Litt.* 246, *a.* 5 *Co.* 70. *Hob.* 253. 1 *P. Wms.* 258. *Cro. Car.* 200. Cites 4 *H. VIII.* 24. *Moor,* 92, *pl.* 229.

The act of limitations is a law calculated for the repose of the people—see the preamble. It has always met with a most favourable interpretation—*Far.* 12. *Salk.* 422. 2 *Burr.* 961. If ever proper to be countenanced in any suit, it certainly is so in this; for this bond has been standing upwards of 20 years; the principal who could defend the suit is dead, and the matter fallen into hands unacquainted with the affair, the very inconvenience the act intended to guard against.

The act does not say that the suit of a husband shall be protected, but only of a *feme*, if she is under coverture; had it intended to have protected his interest as much as her's it would have been expressed.

It has been shewn that the neglect of the husband shall bind himself and the wife during coverture, in matters where his interest is not so great, in things which

he could not of himself acquire the sole property, and it would be strange that the less interest a man has in a thing the greater power he should have over it.

All the cases which are produced to shew the law in some instances protects the wife, do not once mention that the husband shall not be prejudiced, but say it shall not bind the wife *after the coverture*; which shews it shall bind them both during coverture; for you cannot benefit the wife without benefiting the husband; and it is not right, that where he was culpable he should receive benefit; therefore the law postpones the wife's benefit till his death.

Acquiescence of the husband is not to defeat a statute calculated to promote the general tranquility, and to deprive me of the benefit of it.

Though the wife is an infant, yet by her marriage her personal estate is transferred to her husband.

Suppose words spoken of wife during coverture, must not suit be brought within twelve months? yet here both must join, and action will survive.

Trover may be brought for wife's goods before marriage, by husband only—2 *Lev.* 107. 1 *Mod.* 25.

It is said that it is for the wife's benefit that the husband should recover the money. I answer, this is contradicting the policy of the law in protecting the wife in every other instance, which for her benefit restrains the husband from having all in his power. If this debt is recovered, and husband dies, it goes to his executors. And cannot it be a question which is most for her benefit, to have a thing at her husband's death or not? If this reasoning is just, and the more of the wife's estate the husband gets the greater her advantage, why does not the law give him all the wife's property whatever on the intermarriage?

The husband may bring suit alone on a bond debt due his wife. *Vern.* 396. *Ch. Pr.* 415.

This would defeat the act of limitations altogether; most women marry under age—Bonds given to them must be by persons of full age; therefore the chance of survivorship is against obligors, and the marriage may continue many years, 20, 30, or 40, and then this dormant claim is to be set up. The husband is entitled to this debt when recovered; and is it not more reasonable that the neglect of the person solely interested in the recovery should rather prejudice him than defeat the statute.

As to the real estate of the wife it does not pass by the intermarriage; therefore infancy of the wife should benefit her; but of a personal estate it does; and if infancy will be a plea against strangers, why not against husband? We see that though she married in infancy, yet

MAY 1769.
Belt
vs
Hepburn.

as to what the law vested in the husband, her infancy was no impediment to his forfeiting it, and her being bound by his neglect.

But it has been objected that a *personal thing* once suspended is absolutely destroyed, and where a debtee appoints debtor his executor, it is an extinguishment of the debt, and though he afterwards refuses, it is immaterial, on the rule that a personal thing once suspended is always so; therefore it may be urged, that the present case is different from leases for years, which are *chattels real* —1 *Salk*. 202. I answer, there may be a temporary discharge of a debtor.—1 *P. Wms.* 257. This was the case of a woman obligor marrying a man who became a bankrupt—Held, by the bankruptcy and his delivery of his effects, it should discharge him of the debt, and be a *temporary* discharge of the woman. By the same reason, a temporary discharge allowed there, it may here. In *Salkeld*, the suspension must be by act of the party, the act of the husband may not be taken as the act of the wife. Terms for years are not actually transferred by marriage.—1 *P. Wms.* 258. Chattels real are *conditionally* given the husband by the *intermarriage*.—*Co Litt.* 299. *Quere* then, if the property is not in him subject to be defeated on the condition of his not disposing of it?

A man, it has been said, cannot assign his wife's things in action. I answer, no more can he his own things in action; and for the reasons.—See *Gilb. Eq. Rep.* 103.

*Chase*, in reply cited *Baron & Feme*, 105, *pl.* 4. *Moor*, 93, *pl.* 229. *Lilly's Convey.* 25. *Vin.* 106. *Co. Litt.* 246. *a. Carth.* 43. 3 *Bac.* 129. *Vin. tit. Condition*, 118, 42. *Co. Lit.* 201. *a.* What evidence to prove births, marriages, pedigree, &c.—*Sir T. Ray.* 84. 1 *Sid.* 162. 1 *Eq. Ab.* 172, *s.* 4. 2 *Stra.* 1151. 6 *Mod.* 41, 81, 160, 196, 252. *Cro. Eliz.* 227, 411. 2 *Sid.* 71. 1 *Salk.* 281. 12 *Mod.* 86. *Vin. Ab. tit. Evidence*, 203, *pl.* 3; 244, *pl.* 1. Cites *Lill. P. R.* 552, 744, *pl.* 3. Cites *Styles*, 208.

THE OPINION of *Daniel Dulany*, Esquire. "The testator bequeathed to his grandchild the use of all his personal estate in Maryland, except what he bequeathed after. He bequeathed M. M. quantities of wheat, corn and pork, not leaving of these articles sufficient to satisfy this legacy. G. G. the executor, passed an account, and the balance thereon was transmitted to the county court, and a bond given for payment of it to the above grandchild of the deceased testator. The bond was passed 8th November 1745, to the grandchild, legatee, then a minor. viz. about the age of 13 years. The grandchild married in her minority to *Hamilton*. He

died, she afterwards intermarried in the year 1752 with Mr. *Belt*, she being at the time of the last marriage under the age of 21 years.

After the balance transmitted, and bond given as aforesaid, G. G. the executor, passed a subsequent account with the commissary general, and (among other things,) obtained an allowance for an error in charging himself in the former account, upon which the balance aforesaid had been transmitted.

The fact however, of the grandchild and legatee aforesaid, being under the age of 21 when she intermarried with *Belt*, is differently stated, and it is supposed, on the contrary, that she was more than 21 when she last married; and on this part of the case it is further stated, that G. G. is dead, having made his will, and therein, after devising the use of his real estate to his wife, and applying the produce of his estate, (beyond, &c.) *to the discharge of his just debts*, directed, &c. Again G. G. in his will, makes use of the following words, viz. "Item. My will is, that all the rest of my personal estate, *after my legal debts are paid*, be sold," &c.

The questions put are, 1st. Whether the act of limitation may be set up as a bar upon a suit on the bond at law? 2d. Whether supposing a bar at law on the bond, there is any remedy in equity? 3d. How the bequest to M. M. will operate?

As to the first—The answer will depend upon the fact whether Mrs. *Belt* was of age or not when she intermarried with Mr. *Belt*; if she was, there will be a bar; if she was not, I conceive there will not be a bar.

Mrs. *Belt*, it is said, was born in December 1732, and her present husband, it is said, married her in the year 1752. I presume it will be an easy matter to ascertain the fact of her age when she married.

But taking it that there would be a bar at law.

2dly. I conceive that there will be a bar in equity with respect to the sureties in the bond, it not being in the power of G. G. by expressions in his will, to make his sureties liable beyond the operation of their own act in executing the bond, and the act of limitation being as obligatory in equity, where there is no circumstance of fraud, &c. as at law; but I conceive that there may be full remedy in equity against G. G's estate. If it were any way necessary, the parts of G. G's will, so far as his estate is concerned, above mentioned, would take this case out of the act of limitation, especially as the demand is on the behalf of a child of G. G. but I apprehend a suit in equity ought to take the matter up on the footing of *Forbes's* will claiming the legacy, and calling for a discovery and account, without paying any regard to the bond.

Whether a bond extinquishes a legacy upon a question between a court of law, and the spiritual court, on the point of jurisdiction, has been a question differently determined; but I do not know that it has been held to be a merger in equity, and am inclined to think the doctrine of extinguishment, which a court of law might favour, to *controul* the jurisdiction of the spiritual court, would be not so favourably regarded in equity to *oust* chancery of its jurisdiction; but be that as it may, the notion of merger does not apply in this case; for where it does, the superior debt is due, which by the subsequent account passed by G. G. it appears was not the case, and as G. G. unravelled the settlement on account of the error, a cause for which it might have been unravelled in equity, and the bond there set aside, I conceive that the bond cannot be set up in equity to answer the purpose of a merger. *i. e.* it cannot be considered in one view as not obligatory on G. G. in case a demand had been made upon it, and in another view as obligatory upon the obligee to work an extinguishment. Moreover, the bond directed to be given by our testamentary act, is merely for the security of the minor, and comes up to the reason assigned by *Dodderidge* in *Gardner's case*, 2 *Ro. Rep.* why a bond does not deprive a legatee of his remedy in the spiritual court.

As to the last question—I conceive that the bequest to M. M. ought to be made good for the whole. If the testator had bequeathed specifically the corn, &c. in such a house, and there had been none, or less than the quantity there, it might have been otherwise; but this was an absolute unspecific bequest. If an ox, or cow named A. is given, and afterwards destroyed, the legacy fails; but if I give an ox, or a cow, and have neither, the executor must buy one out of the assets; or if I give ten of either, and have only nine, the deficiency, for the like reason, ought to be made good out of my estate. Even in the first case I have put under this question, some books, seem to consider the legacy as absolute, with a demonstration only how to be paid.

                                              DANIEL DULANY."

11th June, 1766.

Another opinion of *Daniel Dulany*, Esquire, the first and latter parts of which are in slaid:

✶✶✶✶ "The case in 3 *P. Will.* does not appear to me to be material. Without doubt, if the trustee of infant neglects, the act of limitation will bind both at law and in equity: at law very clearly, because the person having the legal claim is *only* considered, trust being in no sort the subject of legal consideration; for the very definition of trust

is where there is such a "confidence between parties that "no action at law will lie; but is merely a case for the "consideration of equity," vide 2 *Atkins*, 612; and if wanted, many other books to the same purpose.

Wherefore the *cestuy que* trust is not taken notice of at law, and consequently, no doubt, but the trustee's neglect will bind him there.

The above description of a trust shews, that even in the consideration of equity, the confidence is *merely between the parties;* and that another person cannot be affected by it. The case in *P. Will.* speaks in the same language, "as to the trust, that is *only* between the ad- "ministrator and the infant, and *does not affect the com- "pany.*"

A trust is not affected by the act of limitation. The matter being understood as above, this rule applies only between the parties, and not to a stranger.

The result is, that inasmuch as neither at law, nor in equity, is a trust considerable, but between the parties, the act of limitation is pleadable by every one not a party to the trust; but by a party it is not, (that is,) so far as the trust is in contemplation.

The case in *Cro. Car.* 200, 201, though the other reports of the case do not correspond with it, is, certainly, good law. *Co. Litt.* 246, *a. b.* may also be cited, and *Litt. sect.* 403. But, as they seem to me, are wide of the point The entry of the husband is a remedy to vest an estate of freehold in himself, and, if neglected, his own estate is affected thereby. He may lose his entry; and his wife's, after his death, be preserved; but if, in the present case, the action were not maintainable, the debt would be altogether extinguished; for a personal action, (as this is,) being once suspended, can never be revived —*Hob.* 10 *Tryer & Gildridge.* In *Cro. Car.* the husband alone is affected, the remedy of the wife is preserved. Where there is a legal right it cannot be destitute of a legal remedy. The debt in the present case is a chose in action belonging to the wife, who was an infant till after she married. During her infancy and coverture, no laches are imputable to her. Suppose her to survive her husband, might she not maintain the action? If she might, so can the present action be maintained, because, as is said above, if it be suspended for an hour, it will be totally extinguished. It cannot be maintained that she might support the action after her husband's decease, and yet be maintained that the present action cannot be supported; and if it be advanced, that she would not be able to maintain it after the death of her husband, the saving in the act, of infancy and coverture, would be of little or no avail, as will be hereafter shewn.

I have already observed, that a legal right cannot be destitute of a legal remedy, and the case in *Croke*, well considered, is rather, in principle, for the action. *Germin* argued, that if one enters after a devise, before the devisee enters, and dies seised. the descent shall not take away the entry; so fine and non-claim shall not bar, where it is not turned into a right. The Court, contra— Though a descent in the case put should not bind, because then no action could be maintained, there never having been a seisin, *and so there would be no remedy.* In the case, though the husband was barred of his entry, the right of the wife was admitted. Why did not the descent bar? Because if it did, no remedy would be left; for the sake of the right, the remedy is preserved. Though the husband was barred in respect of his interest, yet the wife was not. But suppose the consequence of the husband's being barred, would have been the barring of the wife, then the case put by *Germin*, of devise and descent, would have ruled it.

Since the case put by *Germin*, of devise and descent, did not apply to the case of the fine, and non-claim, wherein is the difference between the two cases? The entry was not taken away, because then there would have been no remedy left. In the latter, though the entry of the husband taken away, the wife's right preserved. If the former case did not properly apply to the latter, neither would the latter apply to a case similar to the former, as the present, wherein, if the present action be not maintainable, there never can be remedy.

The case put by *Littleton* is this—If there be title of entry in husband and wife, as in right of the wife, the entry of the husband is taken away by descent; but on his death the wife may enter; for that no laches shall turn the wife to any prejudice or loss. Suppose the husband's loss of entry would have deprived the wife of hers, then the laches of husband would have turned to her prejudice or loss, and the very reason given would have been against it. This case, and the case in *Croke*, shew only that the husband may be affected where the wife's right is preserved undestroyed by the husband's laches. But how would it be in the present case? Lord *Coke* in his explication observes, if a *feme sole* be disseised, and then marry, and disseisor die seised, the descent shall take away the entry of the wife, because she might have entered whilst *sole*, and it was her folly to take a negligent husband; but if an *infant*, whilst *sole*, she would not be barred. In the present case, had the *feme* been *sole*, and of age when the cause of action arose, I admit, according to the former case put by Lord *Coke*, the *feme* would be affected by the neglect of the husband; but she

having been an infant, I contend she is not bound according to the latter case, and that this action is necessarily maintainable to preserve her remedy, for the reason above mentioned.

The present suit is in *jure uxoris*—the judgment would not *sua vi* transfer the debt to the husband, for the wife surviving would be entitled to it.

When the law grants or preserves a right, it allows every thing necessary to its preservation.—*Co.* 56. *a.* 153. *a. Cro. Jac.* 170, 189, 190. *Noy*, 123.

The law, I mean the saving in the act of limitation, preserves the right of *femes covert.* Let the nature of this saving be considered—A woman marries, afterwards a debt becomes due to her—She under coverture upwards of 12 years after the debt became due—Is she barred? If she is, where is the protection to her afforded by the saving? How is this distinguishable, if a bar, from a debt originally due to the husband? If the bar should arise in the former, it could do no more in the latter case.

This would be a construction too against the very terms of the act, which gives 5 years, after the coverture; the 5 years are given, in all instances, whatever the duration of the coverture; not 5 years where part of the 12 years ran during the coverture, and part remained. But if the running of the 12 years during the coverture is to be a bar, that would be the effect of the saving, and then the saving would only be where part of the time was to come at the death of the husband, *i. e.* there would be only a particular instance for the act to operate on, when the words are equally comprehensive of other instances, and the construction therefore arbitrary.

If it be contended that there is only a suspension, and that the wife may have her remedy after the dissolution of the coverture, that is answered above. There is either a total extinguishment of the debt, or the action lies; there is no medium. If there be a suspension only, moreover, the defence * * * * *

THE DEFENDANT withdrew the demurrer, and a judgment was confessed upon terms.