PURVIANCE and DORSEY Adm'r of DORSEY *vs.* BARTON, Adm'r *de bonis non* of BARTON.—*June,* 1830.

Under the act of 1820, *ch.* 161, *sec.* 1, the Chancellor is not authorised to take a bill as confessed, and entirely disregard the testimony which the interlocutory order directed in that act to be passed, requires to be taken, under an *ex parte* commission to support the allegations of the bill. The final decree in such case must be sanctioned by the evidence taken under the commission.

APPEAL from the Court of Chancery.

The bill, which was filed in this case by the appellee, on the 31st of January, 1825, sought to charge the appellants, *John Purviance* and *John R. Dorsey*, administrator of *Walter Dorsey*, with the sum of $1,233 27, which it alleged the said *John* and *Walter* owed to *Seth Barton*, the intestate of the complainant. As the decision turned upon the true meaning of the act of 1820, *ch.* 161, and the merits of the case were not involved, it is not necessary to set out the particulars of the complainant's claim, as presented by the bill. The *subpœna* which issued upon it, was returnable to March term, 1825; and accordingly at that term, it

was returned, "summoned *John Purviance*," "*non est Dorsey.*" Afterwards, and at the same term, the complainant filed the following petition: The petition of the complainant humbly sheweth, that on the 31st of January, 1825, he filed his bill in the above cause, and that *subpœna* was accordingly issued, and hath been returned "summoned" as to the said defendant *Purviance*, and "*non est inventus*" as to the said *Dorsey*. That the said *John Purviance*, hath neglected to appear, or file an answer within the time limited by the rules of Court—the complainant, therefore, prays that a commission, *ex parte*, may be issued, to take testimony in the above case, agreeably to the act of Assembly in such case made and provided.

BLAND, Chancellor, (March Term, 1825.)

The defendant, *John Purviance*, having been returned "summoned," and having failed to appear in person, or by solicitor, according to the exigency of the writ, within the time limited by the rules of Court, it is thereupon ordered and decreed, that the complainant is entitled to relief; but as it does not appear to what relief he is entitled, it is further ordered, that commission issue to *Josias Pennington*, and *Robert Wilson, Jr.* to take testimony on the part of the complainant, in support of the allegations contained in the bill.

A commission accordingly issued, under which proof on the part of the complainant was taken, and returned to March term, 1826. At July term, 1826, the defendants, *Purviance* and *Dorsey*, appeared, the *subpœna* against the latter having at the same term been returned "summoned," after the *subpœna* was so returned, and before the appearance of the defendant, *Dorsey*, similar proceedings were has against him, as had been pursued against his co-defendant, *Purviance*. The second commission, and the proof taken thereunder, was returned to March term, 1827; at that Term, neither of the defendants having answered the bill.

BLAND, Chancellor, passed the following decree:

This case standing ready for hearing on the bill and interlocutory orders, and having been submitted by the solicitor for the plaintiff, the proceedings were read and considered. The commissions heretofore issued to take testimony having been returned, and the defendants not having answered—whereupon it is, on the 25th day of June, 1827, by *Theodorick Bland*, Chancellor, and by the authority of this Court, adjudged, ordered, and decreed, that the said bill of complaint be, and the same is hereby taken, *pro confesso*—and it is further adjudged, ordered and decreed, that the said *John Purviance*, and the said *John Robert Dorsey*, administrator of the said *Walter Dorsey*, forthwith pay, or bring into this Court to be paid, unto the said *Thomas B. Barton*, administrator *de bonis non* of the late *Seth Barton*, the sum of $1233 27, with legal interest thereon, from the 5th day of February, 1805, until paid, and costs, &c.

From this decree the defendants, on the 18th of July, then following, appealed to the Court of Appeals.

The cause was argued before BUCHANAN, Ch. J., EARLE, MARTIN, and ARCHER, J.

*Johnson*, for the appellants, contended,

1. That under the circumstances of this case, independent of the evidence taken under the commissions, a decree, *pro confesso*, could not be passed. 2. That if there could have been such a decree, had there been no evidence, the evidence was such as to render such a decree erroneous. 3. That the evidence in the cause shews no liability on the part of the defendants, or of either of them, for a money claim, to the complainant. 4. That if the evidence does shew any such liability, it is not for the amount decreed against them. 5. That there are not proper parties. 1. Prior to the act of 1820, the power of the Chancellor, and the manner of taking bills *pro confesso*, was regulated by the following acts of Assembly: the act of 1785, ch. 72,

*sec.* 19, 20—1795, *ch.* 88—1797, *ch.* 114—1799, *ch.* 79, *sec.* 2, 5, 9—1818, *ch.* 193, *sec.* 5. Under the act of 1820, *ch.* 161, the Chancellor has no power to take bills *pro confesso*, except in the cases provided for in the 2d section; but if he has the power, still when he orders a commission, he must decree in conformity with the proof taken: as the bill was not authorised to be decreed on as confessed, so that the decree was not warranted by the proof. The unanswered allegations of a bill are not admitted. *Warfield vs. Gambrill*, 1 *Gill and Johns.* 503. All the allegations of this bill being unanswered, the whole must be proved. The form of the interlocutory order shows, that the Chancellor supposed he could not decree finally, without a commission; and if so, can it be contended that he is at liberty to disregard the proof taken under it? If the bill is to be taken as confessed, where can be the necessity for proof? The construction which allows bills in cases like the present to be taken *pro confesso*, dispenses entirely with the 2d section of the act, which gives the power so to treat a bill, charging matters in the private knowledge of the defendant: why should the Legislature have specially given the power, in reference to such bills, if under the 1st section, the power was conferred in regard to all bills? The act says a commission shall issue to take proof in support of the allegations of the bill—if the construction contended for on the other side be right, then an appeal would lie from the interlocutory order, which never could have been intended; the effect of the interlocutory decree, is merely to decide that the complainant has presented a case, which, *if true*, entitles him to relief.

    *Taney,* (Att'y Gen'l.) *contra.*

    These proceedings can only be supported under the act of 1820, *ch.* 161. That act does not affect the rights of property, but merely regulates the practice of the Court of Chancery, and therefore the construction put upon it in that Court, will be respected here, unless it be clearly

shown to be erroneous. The object of the Legislature in passing this law, was to prevent delay, an evil to which the Court of Chancery was obnoxious; and as the practice under it, (now complained of) has effected that object, there can be little doubt that it harmonises with the intentions of the Legislature. The objection that injustice might be done, is answered by remarking, that the Chancellor must exercise a sound legal discretion; and there can be no doubt, that upon presenting to him an equitable case, he would open or rescind the interlocutory order, it being in his power to do so, during the term, and admit the party to answer. The interlocutory order spoken of in the act of 1820, is similar to a decree by default—it is certainly not a mere order for a commission, which is no decree at all. It is in the nature of a judgment by default at law, upon *nil dicit:* the Chancellor is bound to pass it, and he has nothing before him but the bill—neither answer or evidence. The commission to take evidence after default, is in the nature of a writ of enquiry; the preceding efforts of the Legislature to render the proceedings of the Court of Chancery less dilatory, having failed, they are to be presumed to have had in view the practice of courts of law in regard to defaults. In relation to proceedings at law on judgments by default, he referred to 2 *Bac. Abr.* 276, *note (a.)* 3 *Stark. Ev.* 1771. If, in the case of a default, the amount to be recovered depends on figures, there need not be a writ of enquiry—assuming the statement in the declaration to be true, the judgment by default admits every thing. The Chancellor was right, therefore, in founding his decree on the statements of the bill, it being a mere matter of calculation, and the bill containing every statement which it would have been necessary to prove. The interlocutory decree decides that the party is entitled to relief, and entitled in the character in which he sues—the amount of the claim, then, is the only matter to be proved under the commission, considering the decree such a judgment by default, as would require a writ of enquiry. If the proof

under the commission does not precisely correspond in amount with the sum decreed, this Court, in reversing, would decree for the sum proved to be due the complainant.

MARTIN, J., delivered the opinion of the Court.

We have carefully examined this case, and think it is not attended with much difficulty, when freed from objections which do not legitimately belong to it, but which have been urged with great ability and ingenuity. It would seem from the argument, the true construction of the act of 1820, *ch.* 161, *sec.* 1, is only to be collected from the interlocutory order it directs. This order is a mere subordinate feature in the law, and its aid is not required to explain that which is clear and manifest without it: give to it what name or character you please, it cannot authorise the Chancellor *to* take the bill *pro confesso*, and entirely disregard the testimony, which the order itself states to be necessary to a correct decision, and which the act of 1820 requires, to *support the allegations in the bill.* Independent of the provisions of that act, the proceedings in this case appear inconsistent on the face of them. If the bill was to be taken *pro confesso*, and as such would justify a final decree, was it not a mockery to issue a commission to take testimony, when the testimony under it was to have no effect, but to be treated as a mere nullity? It has been conceded by the counsel for the appellee, that unless this proceeding is authorised by the act of 1820, *ch.* 161, the decree cannot be sustained. Before the passage of this act, a commission could not be issued to take testimony until the defendants answered, and the cause was at issue—to prevent the delay consequent upon this course of proceeding, gave birth to the *first section* of the act of 1820. By that section it is declared, where a *subpœna* has been issued, on a bill in Chancery, and returned summoned, as to all, or any of the defendants, and the said defendants, or any of them so summoned, shall fail to appear, or having appeared, shall fail to answer, the Chancellor, upon the application of the com-

plainant, shall enter an interlocutory decree in such case, and issue a commission, *ex parte*, to take testimony *to support the allegations in the bill;* which commission shall be issued, proceeded in, and returned, in the same manner, and the testimony returned *shall have the same effect*, as if issued and returned in the *usual* way, on answer, general replication and issue, and the Court shall proceed to a final decree in the cause, *in the same manner* as if the defendant or defendants had appeared and put in their answer. It is difficult to suggest any language which could express in a more clear and explicit manner, the object of the Legislature in passing the law, and the course directed by it to be pursued in the Court of Chancery. Upon the non-appearance of the defendant, or his failure to put in an answer, an *ex parte* commission shall be issued to take testimony—for what purpose? The act tells us explicitly, *to support the allegations in the bill.* Why take testimony to support the allegations *in the bill*, if the bill is to be taken *pro confesso*, and is sufficient to justify a final decree, without any proof of those allegations? But the act does not stop here—it leaves nothing for construction, but points out, in the most unequivocal terms, the effect that is to be given to the testimony thus returned, and *the decree that the Chancellor is to pronounce in the cause.* It declares the commission shall be issued, and the testimony taken under it *shall have the same effect* as if issued and returned in the usual way, on an answer, general replication and issue, and the Court shall proceed to a final decree in the cause, *in the same manner as if the defendant had appeared and put in his answer*—thus clearly intending to place a cause upon the return of an *ex parte* commission, in the same situation as if a commission had been issued after answer, &c. filed, and that the Court of Chancery should proceed to a final decree in both cases, in the same manner. If the first section of this act was ambiguous and doubtful, we might call in the second section to aid in its construction—but this we deem unnecessary. The decree in this

case, taking the bill *pro confesso*, was not authorised by the act of 1820, and it is therefore reversed, and the bill dismissed, but without prejudice.

DECREE REVERSED.