# MARYLAND REPORTS.

## JUNE TERM, 1859.

## Wm. Knight and Catharine Knight his Wife, vs. Wm. H. Brawner and George Dunnington.

A bill in equity was filed by a legatee against an executor and the *sureties* upon his *bond*, to recover a *legacy*, and having been dismissed as to the *sureties*, the complainant appealed. HELD:

That no objection to the *jurisdiction* appearing by the record to have been made in the court below, the act of 1841, ch. 163, *precludes* the appellate court from considering that question.

Chancery follows the law, and acting in obedience to the statute, the plea of limitations is as available in equity as at law, in relation to the same subject matter.

A *feme covert* is within the saving clause of the act of 1729, ch. 24, sec. 22, and the plea of limitations is no bar to an action by *husband and wife* on an executor's bond, to recover a legacy given the wife, who was *covert* at the time of the probate of the will, though brought more than twelve years after the passing of the bond.

The institution of a suit by husband and wife to recover a legacy given the wife, is not a reduction into possession, and a decree or judgment would not, *sua vi*, transfer it to the husband, for the wife surviving would be entitled to it.

APPEAL from the Equity Side of the Circuit Court for Charles County.

Mary M. Nelson, by her will probated on the 19th of August 1839, among others, made the following bequest: "I lend unto my daughter, Catharine Knight, (formerly Catharine Nelson,) during her natural life, one negro man named *Jim*, and one negro woman *Mary*, and her two children; and, at the death of the said Catharine Knight, I give and bequeath

1    v. 14.

Knight & Wife *vs.* Brawner, *et al.*

the said negroes to be equally divided among her children."
Her son, John H. Nelson, was her executor, and, on the 20th
of August 1839, executed a bond in the usual form, as such
executor, with the appellees as his sureties therein.

This bill was filed on the 28th of February 1855, by the
appellants, who, at the death of the testatrix, and ever since,
were, and have been, non-residents of this State, against the
appellees and the said John H. Nelson, to recover the above
legacy. Duly certified copies of the will, bond, account of
sales made by the executor, and his fifth and final administra-
tion account, are filed as exhibits with, and made part of, the
bill, the allegations of which, as well as those of the answers,
and the proceedings in the case, are sufficiently stated in the
opinion of this court.

From the decree of the court below (Crain, J.) dismissing
the bill as to the appellees, the complainants appealed.

The cause was argued before Le Grand, C. J., Eccle-
ston and Bartol, J.

*Robert S. Reeder*, for the appellants:

The exhibits which are made part of the bill, consisting of
attested and certified copies of the will, the executor's bond,
the account of sales and the administration account, are suffi-
cient evidence to charge the appellees with the distributive
balance in the hands of the executor after the final account.
To this claim, thus sustained by competent evidence, the ap-
pellees have interposed as their sole defence the statute of li-
mitation: that more than twelve years have elapsed between
the execution of the bond and the filing of this bill.

The appellants contend that though the statute might oper-
ate in favor of the appellees as a defence at *law*, it cannot do
so in a court of equity under the peculiar circumstances of
this case. The defence pleaded is simply the Act of 1729,
ch. 24, which declares that all actions upon administration
and testamentary bonds shall be commenced within twelve
years after the passing of the said bonds, and not after; the

Knight & Wife *vs.* Brawner, *et. al.*

expiration of twelve years constitutes the sole defence.   This statute, as the court are aware, is exclusively applicable to actions at law as a legal defence, and can only be used in equity by analogy or as a matter of conscience, *(Angell on Lim.,* 27,) and the question of its application in equity is to be decided upon from all the facts and circumstances of the case; it is at all times an open question, and is not concluded by a specific lapse of time, but must be decided by a large and liberal exercise of conscience.   In *Luman vs. Jones,* 3 *H. & McH.,* 328, more than thirty years had expired from the execution of the mortgage to the filing of the bill, and the statute was there pleaded, and the chancellor sustained it, but the Court of *A*ppeals reversed the decree.   The claim of the legatee here, is matter of record, and where the final account of the executor shows that the fund never has been distributed or legitimately disposed of, surely the statute cannot bar.   In all the cases I have examined, where there has been an application of the statute, except where an unreasonable length of time had elapsed, have been cases between individuals upon private or individual claims, and not of a legatee or distributee seeking to recover what belonged to him under a will.

But the appellants further insist, that this case is in the nature of *a trust,* and that, therefore, the statute cannot bar. The bequest is, *"I* lend to my daughter *during her natural life"* these negroes, and at *her death* the negroes are to be divided equally among her children.   The appellees, by the condition of the bond, became responsible for the faithful execution, by the executor, of this clause of the will, no matter how long the *loan* might continue.   A trust was created until the death of the legatee for life, and is a matter wholly cognizable in chancery, or in the orphans court, in the exercise of an equitable jurisdiction.   Could the statute be interposed in the defence of these appellees in the orphans court?   I think not; and if so, how can it be interposed as an · unmeritorious defence in another equitable tribunal?   But it seems to me that equity alone can entertain jurisdiction of the case.   Until the happening of the contingency the will vests the legal title in the

executor, and makes him, during that period, an executory trustee, and, by force of such a bequest, is it not the duty of the executor to retain the property and apply the proceeds until the death of the legatee for life? In such a state of the case, is not a court of equity the only *forum* having jurisdiction, and thereby precluding the ability of the appellees to use the statute for their defence? This view is strengthened by the fact, that the legacy in kind was sold and converted into money, and under the decision in *Evans vs. Iglehart*, 6 *G. & J.*, 171, quoted with approbation in *Hanson vs. Brawner*, 2 *Md. Rep.*, 90, was it not the duty of the executor to invest the fund under an order of the orphans court, and pay the interest annually to the legatee for life? And if this be so, are not the sureties liable through the continuous responsibility? and being subject, exclusively, to an equitable control, can they avail themselves of the statute?

*Frank H. Stockett*, for the appellees, argued, that the decree dismissing the bill as to them was correct:

1st. For though, as a general rule, where there are several defendants the cause cannot be heard until it is ready against all the defendants, yet, in this cause, the written agreement of the parties avoids that difficulty.

2nd. That the complainants were in error in the mode of relief prayed for, and were not entitled to the relief they sought against these appellees as sureties on the bond of the executor, John H. Nelson, in the present form of proceedings.

3rd. Assuming that the appellees were responsible for the default of the executor in the mode adopted by the complainants, they still insist there was no evidence, whatever, to sustain the allegations of the bill, charging them with the legacy under the agreement submitting the cause for final decision on the *bill and answer*. *Alex. Ch. Pr.*, 115. 2 *Bland*, 267, *Contee vs. Dawson*. 3 *Bland*, 141, *Salmon vs. Clagett*. *Ibid*, 579, *Neale vs. Hagthorp*. 2 *H. & J.*, 304, *Hopkins vs. Stump*. 5 *H. & J.*, 382, *Jones vs. Slubey*. 3 *G. & J.*, 433, *Roberts vs. Salisbury*. 8 *G. & J.*, 170, *Dilly, et al. vs. Barnard*. 1 *Ves. Sen.*, 97, *Arnot vs. Biscoe*. *Story's Eq.*

*Pl. secs.* 854 to 857, 877.　4 *Madd. Ch. Rep.*, 255, *Bott vs. Birch.*

4th. That whatever remedy the appellants may have had against these defendants was barred by limitations before the commencement of these proceedings, which defence is pleaded and relied on in their answer. Act of 1729 ch. 24, sec. 21. Nor will it avail them that they were not residents of this State. Act of 1818, ch. 216. 2 *G. & J.*, 365, *State vs. Boyd.* 6 *G. & J.*, 312, *Gott & Wilson vs. Carr.* And this defence is as available in equity as at law. 1 *Bland*, 57, *Strike's Case.* 2 *G. & J.*, 307, *Watkins vs. Harwood.* 6 *G. & J.*, 12, *Dorsey vs. Dorsey.* 10 *G. & J.*, 223, *Tiernan vs. Rescaniere.* 1 *Gill*, 234, *Berry vs. Pierson.* 7 *Gill*, 66, *Sindall & wife vs. Campbell.* 2 *Md. Ch. Dec.*, 128, *Hertle vs. McDonald.* 4 *Md. Ch. Dec.*, 253, *Ohio Life Ins. & Trust Co. vs. Winn & Ross.* 3 *Md. Rep.*, 366, *Hertle & Wife vs. Schwartze & McDonald.* 8 *Md. Rep.*, 70, *Teackle Trustee, &c., vs. Gibson.*

BARTOL, J. delivered the opinion of this court.

This is an appeal from the equity side of the Circuit Court for Charles county. The bill was filed on the 28th of February 1855, by the appellants against one John H. Nelson, and the appellees, who were the sureties of Nelson, on his bond, as executor of the last will of Mary M. Nelson, deceased. The object of the bill is to recover a legacy alleged to have been given by the last will of Mary M. Nelson, to the wife of the appellant, (William Knight.) It states, among other things, that the executor had taken possession of the property and effects, sold the negroes which were the subject of the specific legacy claimed, passed several accounts, the final one on the 11th of April 1843, showing a balance of the estate remaining in his hands, to the amount of $2,211.31, and the bill charges the executor with a *devastavit* of the assets, and a failure to account for the balance remaining in his hands, whereby the appellants lost their legacy.

To this bill John H. Nelson filed his separate answer, on the 25th of June 1855, and from a memorandum in the record,

it appears that exceptions to said Nelson's answer were filed by the complainants, which are still pending.

A joint answer was filed by the appellees, in which they admit the death of Mary M. Nelson, that the copy of her last will exhibited by the complainants is a true copy, that John H. Nelson was appointed and acted as her executor, and gave bond as such, on which they were the sureties, and that the copy of the bond exhibited with the bill is correct.   They deny all knowledge of the other allegations of the bill, and leave complainants to prove them; and they plead and rely upon the statute of limitations as a complete bar and defence against any recovery by the complainants against them in this action.

On the 4th of September 1855, the complainants filed exceptions to this answer on the ground of insufficiency, which exceptions were, on the 25th of January 1856, overruled by the Circuit Court.

On the 5th of May 1856, an agreement was filed, signed by the solicitors of the parties, submitting the cause for final hearing as against the appellees on the bill and answer.   The proofs relied on by the complainants in support of the allegations in the bill, are, a copy of the will, the testamentary bond, the inventory, account of sales, and of the several administration accounts passed by the executor in the orphans court; all of which were exhibited with the bill of complaint.

Under the agreement for submission, the judge of the Circuit Court examined the proceedings, and on the 19th of May 1859, passed a decree dismissing the bill as against the two respondents, Brawner and Dunnington.   Whereupon the complainants prosecuted this appeal.

No objection to the jurisdiction appears by the record to have been made by the defendants in the court below, and we are precluded by the act of 1841, ch. 163, from considering that question on this appeal.

The only defence relied on by the appellees arises under the Statute of Limitations of 1729, ch. 24, sec. 21, which provides, "that all actions upon administration and testamentary bonds, shall be commenced within twelve years after the passing of the said bonds, and not after."

In this case the bond upon which the appellees were sureties, was passed on the 20th of August 1839, and the suit was brought on the 28th of February 1855; and it has been argued that inasmuch as the liability of the appellees arises only upon the testamentary bond, the statute is a complete bar to the relief sought against them by the bill.

It is a well established principle, that "chancery follows the law, and acting in obedience to the statute, the plea of limitations is as available in equity, as at law, in relation to the same subject matter." 2 *G. & J.*, 311. 3 *Gill,* 161. 7 *Gill,* 66. 3 *Md. Rep.,* 366. 8 *Md. Rep.,* 70.

These decisions would be conclusive of the present case, if the party in whose right the relief is claimed were *sui juris*; but the claim sought to be enforced is that of a married woman, and the question arises, whether she is not within the saving clause of the statute? By the 22nd section it is provided, "that nothing in this act shall be construed to bar any person within the age of twenty-one years, *feme covert,* &c., from bringing an action or actions, within six years after their coming to, or being of full age, *uncovert,* &c., upon any administration or testamentary bond."

The complainant *Catharine,* to whom the legacy was given by the will of Mary M. Nelson, was at the time of the probate of the will, and the execution of the bond, a married woman, and her disability still continues; she is, therefore, within the very words of the saving clause. The legacy claimed is a *chose* in action belonging to the wife, which survives to her if not reduced into possession by the husband in his lifetime. The institution of the suit for its recovery is not a reduction into possession; it is instituted by the husband and wife, *jure uxoris,* and "a decree or judgment would not *sua vi* transfer it to the husband, for the wife surviving would be entitled to it."

If no suit were instituted during the coverture, by the terms of the Act she would have six years after the coverture within which to sue; how then can she be barred during the coverture? Being under disability no *laches* can be imputed to her; and to deny to her, in this case, the benefit of the

saving in the Act, would be, in our opinion, to defeat its purpose altogether.

This question is discussed with great ability in the case of *Belt vs. Hepburn*, 4 *H. & McH.*, 512, *Appendix*, and we consider the reasoning of Daniel Dulany, Esq., on this point, in his elaborate opinions reported in that case, as sound, and well supported by the authorities.

In that case the plaintiffs relied upon cumulative disabilities: The wife was an infant when the bond was executed, and during infancy became covert. Those parts of Mr. Dulany's opinions which relates to the effect of successive or cumulative disabilities, are contrary to what has long been established law in Maryland. See *Hertle vs. McDonald*, 2 *Md. Ch. Dec.*, 128, and 3 *Md. Rep.*, 366. But the error on that point, in no respect impairs the force of the reasoning upon the particular question involved in this case, and without further repeating the grounds upon which it rests, we refer to those opinions, and the authorities therein cited, in support of the conclusions which we have stated.

*Decree reversed and cause remanded.*

(Decided June 10th, 1859.)