## St. Geo. W. Teackle, Permanent Trustee of Geo. Carey, Geo. T. Wethered and John H. O'Donnell, *vs.* George S. Gibson.

Since the act of 1841, ch. 163, the defendant cannot rely in this court upon any objection to the jurisdiction of the court below, unless it appears by the record that such objection was made below.

Where a *defendant* pleads two pleas, one of which is overruled and the other sustained and the bill dismissed, and the *complainant* appeals, this court will consider *both pleas*, and if either is a good defence, will affirm the decree dismissing the bill.

In all cases of concurrent jurisdiction between courts of law and equity, the statute of limitations is equally obligatory in each court.

Where an insolvent debtor makes a fraudulent transfer of money and personal property to a favored creditor, the trustee in insolvency may maintain an action at law therefor against the preferred creditor.

Under the act of 1829, ch. 208, sec. 3, the *provisional trustee* has as full power to sue for and recover property fraudulently conveyed by the insolvent as the permanent trustee has.

Limitations will begin to run against such provisional trustee from the time of his appointment and qualification, and when once commenced, *continues* to run against the permanent trustee also.

Cross-Appeals from the Equity Side of the Superior Court of Baltimore city.

The bill in this case was filed on the 8th of December 1850, by Teackle, permanent trustee in insolvency of Carey, Wethered and O'Donnell, to set aside an alleged fraudulent transfer and preference made by the insolvents, in 1840, in favor of the defendant, Gibson. The allegations of the bill and the facts of the case are fully stated in the opinion of this court. The court below, (FRICK, J.,) sustained one of the pleas of limitations filed by the defendant and overruled the other and dismissed the bill. From this decree both parties appealed.

The cause was argued before LE GRAND, C. J., TUCK and MASON, J.

*Henry Winter Davis* for the trustee:—1st, moved to dismiss the appeal of Gibson, because the decree dismissing the bill is in *his favor* and there is no decree or order *against him* from which any appeal lies. 2 *Md. Rep.*, 271, *Mitchell vs. Smith.* 9 *Gill*, 56, *Ramsay vs. Glass.* 5 *Md. Rep.*, 186, *Ringgold vs. Barley.* 8 *Gill*, 370, *Winter vs. Donovan.* 4 *G. & J.*, 407, *Charlotte Hall School vs. Greenwell.* 1 *Gill*, 32, *O'Reiley vs. Murdoch.* But if this motion should be overruled, the complainant then insists that the *first plea* was properly overruled by the court below, because the *provisional trustee* could not file a bill to set aside this fraudulent transfer and preference, nor has he any right to call a mortgagee to settle an account, nor has he any right to the possession of the mortgaged property; but this can be done only by the *permanent trustee.* Under the act of 1816, ch. 221, the provisional trustee is simply made the *custodiary,* for the time being, of the property which was in the possession of the insolvent, and he cannot sue for it unless it has been taken out of his possession, in which case he may maintain an action as *special bailee.* 5 *H. & J.*, 403, *Kennedy vs. Boggs.* Where the statutes refer to the provisional trustee, they speak only of property in the possession of the insolvent or *choses in action,* which the insolvent himself could *sue for and collect;* but in the case of fraudulent deeds and preferences, the insolvent himself has *no*

*right* to sue, for they are good as *against him,* though fraudulent as to *creditors.* The act of 1819, ch. 84, sec. 8, only requires the provisional trustee to give bond for the delivery over to the permanent trustee of the property and estate of the insolvent in his hands, and does not vary or enlarge the *powers* conferred upon him by the act of 1816. The 10th section of the act of 1825, ch. 205, simply requires the provisional trustee to execute a deed conveying to the permanent trustee that property only which had come into his hands under the previous laws. The act of 1829, ch. 208, sec. 3, dispenses with the necessity of a deed from the insolvent to the provisional trustee, and, according to my construction of it, vests in him all the property, effects and claims of the *insolvent debtor;* that is, such as the *debtor himself* could sue *for and recover.* But property fraudulently conveyed by the insolvent is not that to which the insolvent himself has any *title or claim.* This act therefore refers only to the powers conferred upon the provisional trustee by *previous laws,* and invests him with no *new powers.* There is a very good reason why the provisional trustee should not have the power to sue in such a case as this. The law nowhere provides that the permanent trustee may *carry on* a suit instituted by the provisional trustee, and the suit so instituted must therefore fail. See also on this point 2 *H. & G.,* 24, *Brown vs. Brice.* 4 *G. & J.,* 385, *Glenn vs. Karthaus.* 5 *Gill,* 138, *Alexander vs. Ghiselin.*

2nd. The appeal of the complainant presents the two general questions:—1st, whether the plea of limitations allowed by the court below is a defence to the claim *made by the bill?* and 2nd, whether in *the form* in which it is pleaded it is a good defence?

The bill by its allegations and prayers seeks two measures of relief which are perfectly consistent with each other, and to neither of them is the plea of limitations of three years either applicable or a bar:—1st. So far as the bill charges a transfer of assets by way of *security* against *liabilities,* and prays an account of the assets transferred, and of the liabilities actually existing or discharged, and for payment and delivery to the trustee of the assets not collected or not actually applied, the

limitation of three years has and can have no application. The plea *confesses* the *mortgage*. It does not aver an adverse possession, but leaves it where the bill leaves it,—a possession as *mortgagee*. And on that fact alone the case of *Alexander vs. Ghiselin vests* the right of the insolvent trustee to the possession of the assets so mortgaged, and when they get into his hands he administers them according to the liens and priorities recognised by the law. No court has ever held the plea of possession of a mortgaged chattel, note or money, for three or six years any bar to a suit for an account and payment of the residue. A fortiori, can such plea be no bar to a bill for an account of a general transfer, of notes, open accounts and bonds, which must be collected, and of goods which must be sold, where the time assigned to sell and collect must be of uncertain duration, and where the liabilities which they are to meet and protect are not specified and may not be due for months or years, or may be matter of dispute and litigation? yet *such* is the *exact* case made by the bill, and the consequence of sustaining the plea is to give the whole assets transferred to the defendant without account, though on the face of the bill, and admitted by the plea, they are twice or three times the liabilities *alleged* but not *admitted* to exist. These propositions cover so much of the bill as relates to the assets unliquidated and unapplied to the discharge of liabilities actually incurred and paid. It is simply the claim of a mortgagor to an account and payment of the balance, which entitles him to the balance on a final settlement of the whole matter, united with the claim of the insolvent trustee under our acts to receive possession of the unapplied assets, and to administer them himself under his responsibility as representative of the creditor and debtor. As to limitation to a mortgage, see 3 *H. & McH.,* 328, *Lamar vs. Jones.* 3 *G. & J.,* 389, *Green vs. Johnson.* 6 *Do.,* 80, *Callis vs. Tolson. Ibid.,* 275, *Dougherty vs. McColgan.* 7 *Do.,* 20, *Cole vs. Hebb.* 10 *Do.,* 217, *Tiernan vs. Rescanicre.* 6 *Gill,* 445, *Griffith, et al., vs. Reigart & Wife.* 4 *Wash. C. C. Rep.,* 631, *Wisner vs. Barnet.* 4 *Cranch,* 415, *Higginson vs. Mein.* 6 *Wheat.,* 481, *Prevost vs. Gratz.* 5 *How.,* 233, *Taylor vs. Benham.* 1 *Hare.,* 594,

*Portlock vs. Gardner.* 4 *Younge & Collyer*, 42, *Denys vs. Shuckburgh.* 4 *Mylne & Cr.*, 1, *Attorney Gen. vs. Fishmongers Co.*

2nd. But the bill, after praying that relief, asks the *additional relief* that the assignment may be declared fraudulent and void against creditors. The result of obtaining this relief, in addition to that above mentioned, is, that if the defendant has actually received any money from the things transferred, *over and above his dividend under the insolvent assignment,* he will under this prayer be obliged to pay such difference to the trustee for the benefit of the other creditors. It is therefore plain that *this* relief is not inconsistent with the former, but in addition to it and of the same nature, and that the former may be granted and this fail. *Albert & Wife, vs. Winn & Ross,* 7 *Gill,* 446, and 5 *Md. Rep.,* 66, and 2 *Md. Ch. Dec.,* 42, 169. *Thomas vs. Doub,* 8 *Gill,* 1. Any relief consistent with the allegations of the bill may be granted if it contains a general prayer. 10 *G. & J.,* 108, *Gibson vs. McCormick.* 6 *H. & J.,* 29, 30, *Chalmers vs. Chambers. Ibid.,* 292, *Drury vs. Conner.* Therefore, even if the plea be a bar to this part and purpose of the bill, it was erroneous to hold it good as to the other relief for being a good plea as to part only, and yet pleaded to the whole bill it was too wide, and for that reason alone should have been overruled.

3rd. But the plea, if intended to apply to this bill, considered as a bill, to avoid a fraudulent assignment, is entirely misconceived. A conveyance, giving an improper preference against the insolvent laws is fraudulent and void, because a fraud on the rights of creditors to have the property equally distributed among them. It is not merely an implied and constructive fraud, but an actual, intentional and dishonest fraud, which knowingly attempts to take from the other creditors the difference between the dividend and the property conveyed. It is a worse fraud than taking property by a voluntary conveyance. *Act of* 1816, *ch.* 221, *sec.* 6. 7 *G. & J.,* 170, *Dulaney vs. Hoffman.* 1 *Md. Rep.,* 455, *Waters vs. Dashiell.* 1 *Am. Lead. Cases,* 50. 5 *H. & J.,* 403, *Kennedy vs. Boggs.* The question then is, when does the statute begin to run in

cases of such *fraudulent preferences*. If the fraud exists and be not known, the rule of equity is clear that the statute only begins to run from *the discovery of the fraud*. 2 *Story's Eq.*, *sec*. 1521, *(a.)* 6 *Wheat.*, 497, *Prevost vs. Gratz*. The bill here alleges that this discovery was made within three years before filing the bill, and the plea *admits* this allegation, not being accompanied with an answer denying the fraud *or the time of its discovery*. Now the plea, if available *at all*, must go either:—1st, to the possession of the property, or, 2nd, to the debts of the creditors represented by the complainant.

1st. A fraudulent *assignee* stands exactly in the place of the fraudulent *assignor* as against a suing creditor of the assignor. He can take *all* the defences which would be available for the assignor at the same time and under the same circumstances, but he can take no other. The insolvent trustee in this suit represents as well the *creditor* as the assignor, and has the right of both free from the disabilities of the assignor. The first principle of the statute against conveyances to hinder, delay and defraud creditors, is, that as respects the claim of the *creditor* the property is considered as never having been out of the hands of the *debtor*, entirely irrespective of the length of time during which it may have been held by the *fraudulent donee*. No instance exists of a plea of limitations based on the *possession* of the property by a fraudulent donee in the English courts, and there is none in the Maryland courts. This court has never decided that a fraudulent grantee can plead that he has *held* the property *for more than three years*, and thus interpose the plea of limitations. They have only decided that he may plead limitations to the *debts* of the suing *creditors*. The reason is that the fraudulent *donee* stands in the place of the *donor;* the property is regarded as in the *donor's* possession, and a plea by *him* of limitations based on possession would be an *absurdity*. The only mode in which limitations ever did, or ever could apply, in England, was on the ground of *laches*, in failing to prosecute the fraudulent donee after obtaining *judgment* and a *right* to execution against the donor, which was the condition precedent to a right to sue the *donee*. On these points see 5 *Gill*, 449,

*Worthington vs. Shipley.* 1 *Md. Rep.*, 455, 470, 472, *Waters vs. Dashiell.* 2 *Brock.*, 285, 288, 289, *Gallego vs. Gallego.* 5 *G. & J.*, 432, *Birely & Holtz, vs. Staley.* 2 *H. & G.*, 191, *Strike vs. McDonald.* 7 *How.*, 220, *McLaughlin vs. Bank of Potomac.* 11 *Wheat.*, 213, *Hinde vs. Longworth.* 2 *Dessa.*, 215, *Buist vs. Smyth.* 4 *How.*, 503, 560, *Michoud vs. Girod.* 11 *Wheat.*, 78, *Brooks vs. Marbury.* 6 *Wheat.*, 481, *Prevost vs. Gratz.* 8 *Pet.*, 244, *Gregg vs. Sayre.* 2 *Bland*, 26, *Kipp vs. Hanna.* 10 *Pet.*, 177, *Boone vs. Chiles.* *Story's Eq.*, secs. 437, 439, 1265, 1520, (a.) 7 *G. & J.*, 170, *Dulaney vs. Hoffman.* 11 *Mees. & Wels.*, 530, *Grimsby vs. Ball.*

2nd. The only other aspect in which a plea of limitations can be considered in such a suit is as applicable to the *debt* of the creditor. Here again the right of the *donee* is the right of the *donor.* He has *all* his rights, but he has *no more* than his rights; for the principle of the law is, that it does not regard the property as *at all*, for *any purpose*, altered by the fraudulent conveyance. How far then is the plea of limitations applicable to the creditor's *debt?* As far in the mouth of the *donee* as it was in that of the *donor*, and *no farther*. In England there was no limitation to a judgment, and therefore there was *none* to a suit to enforce the judgment against the fraudulent donee, but the presumption of satisfaction from the lapse of twenty years. So long as execution can be obtained the right to levy it on the property fraudulently conveyed exists. This was available to the donee just as a plea of payment, accord and satisfaction or release would have been. In Maryland the plea of twelve years' limitation to a judgment would protect the *donee* if not sued until after judgment against the donor. If the donee be sued *before* judgment, under our act, then also he has open all the defences of the donor and *none other.* He may plead accord and satisfaction or release, or he may deny the debt by *non-assumpsit;* as to a judgment, he may plead *nul tiel record* if the proceeding were after judgment; or he may plead limitations of *three* years to the debt if simple contract, or twelve years if under seal. And so this court have held in *McDowell vs. Goldsmith*, 6 *Md. Rep.*,

319, and 2 *Md. Ch. Dec.*, 370. But *in no case* has he ever been allowed to go behind a judgment and plead limitations to the original claim, because the judgment concludes him as well as the donor, unless rendered by fraud. 2 *Pet.*, 107, *Venable vs. Bank of U. S.* 4 *Wheat.*, 503, *Wheaton vs. Sexton.* It is therefore plain, that the plea of limitations in *this* case is utterly untenable, for there is no plea that *all debts* are barred by any limitation, and there may be debts by judgment or specialty which would not be barred for *twelve years,* while *three years* is the limitation here relied on. And there is no plea *at all* going to *this point,* but it rests exclusively on the accrual of the trustee's right against the *donee,* and has no relation to the *debts* he represents. The two points are totally distinct:—1st. If *possession* of the assets by the *donee* be the point, then it is immaterial whether the *debt* accrued yesterday or ten years ago. 2nd. If the plea goes to the *debt* then the possession may have been only of *yesterday,* and yet the debt being barred cannot be enforced against the *donee,* because it could not against the *donor.* The plea in this case involves the additional absurdity, that but for the *fraud* the mortgagee could be compelled to account, but because of the fraud his possession is argued to have been *adverse,* and not as *mortgagee,* and so barred by lapse of three years. The complainant had no remedy *at law* which he could enforce and which he is now seeking to enforce in equity, and it is therefore absurd to say that there is any *analogy* in such a case between law and equity.

3rd. But if applicable the plea is badly pleaded; for, 1st it goes to the whole relief when it should be confined to so much of it as prays a decree avoiding the assignment; 2nd, it does not meet the averments of a discovery of the fund within three years; nor of the other fact, of the time consumed in vacating a fraudulent assignment of the equity of redemption of these assets to Hinkley and Woodward within three years from which this suit was brought; 3d, nor is the plea accompanied with an answer going to the denial of these particular facts of avoidance by anticipation of the plea of limitations; nor is there any answer denying the *fund* in the assignment alleged

in the *bill.* *Story's Eq. Pl.*, secs. 674, 754, 815. 2 *Daniel's Ch. Pr.*, 7, 13, 716, 720, 721, 762, 763. 3 *G. & J.*, 491, 503, *Carroll vs. Waring.* 8 *Gill,* 322, 331, *Negro Franklin vs. Waters.* 3 *Leigh,* 729, *Shields vs. Anderson.* 2 *Younge & Collyer,* 58, *Booksbank vs. Smith.* 2 *Sch. & Lef.*, 634, *Hovenden vs. Lord Annesley.* 2 *Ball & Beatt.*, 118, *Blenne-rhassett vs. Day.*

*William H. Norris* for the defendant, argued:

1st. That as the appeal is from the decree *dismissing the bill* every point which will sustain the action of the court below is open upon the complainant's appeal, whether decided in favor of the defendant or against, or which are in fact presented by the record. Upon appeal from such a decree the simple question is, did the court below do right *in dismissing the bill?* This court has nothing to do with *the reasons* upon which the bill was dismissed. This is the result of the general principles of chancery law. 15 *How.*, 465, 466. *Corning vs. Troy Iron & Nail Factory.* 1 *Md. Rep.*, 395, *Young vs. Frost.* 1 *Cowen,* 702, *Atkinson vs. Manks.* 16 *How.*, 105, *Piquignot vs. Penn. Rail Road Co.* 6 *G. & J.*, 46, *Ellicott vs. Ellicott.* 1 *Gill,* 248, *Berry vs. Pierson.* But this is additionally so by force of the acts of 1830, ch. 185, and 1832, ch. 302, sec. 6, the former of which declares, that upon appeal from the final decree all previous interlocutory orders are open for review. 11 *G. & J.*, 364, *Lee vs. Pindle.* 3 *Gill,* 152, 153, *Dugan vs. Gittings.* 3 *Md. Rep.*, 210, *Boehme vs. Carr.* Act of 1831, ch. 319. 6 *How.*, 205, *Forgay vs. Conrad.* 7 *Gill,* 244, *Mong vs. Bell.* Acts of 1785, ch. 72, sec. 27; 1826, ch. 200, sec. 14, and 1818, ch. 193, sec. 1. Even *at law* such questions as arise on this appeal in favor of the appellee are examined on the appeal of the plaintiff when the judgment is against him and he alone appeals. This court has frequently said in common law cases, that if they see a plea of limitations which will bar the plaintiff's claim they will not send the case back even if they reverse. 1 *Md. Rep.*, 115, *Mudd vs. Harper.* *Ibid,* 208, *Dorsey vs. Dashiell.* 4 *G. & J.*, 470, *Berry vs. Harper.*

6 *H. & J.*, 61, *Turnpike Co. vs. Barnes.* 6 *Gill*, 191, 200, *Emory & Gault vs. Owings.* This question therefore being open the defendant insists:

2nd. That the *special plea* of limitations by the defendant is a complete bar to the suit, and completely bars the complainant until he avers that the provisional trustee had been kept in ignorance of his right of action by the concealment and fraud of the defendant, and such averment could not in truth be made, because Hinkley, the provisional trustee, was himself one of the grantees in the deed of trust from which the complainant alleges that he first discovered the transfer assailed by the bill. The complainant is the permanent trustee and he has no independent right to sue, but a *derivative* one only, through the *provisional trustee.* The act of 1816, ch. 221, undoubtedly intended that the title to sue should be vested in the provisional trustee, but the legislature omitted to make him a *bonded officer.* This defect was remedied by the act of 1819, ch. 84, secs. 7 & 8. Then came the act of 1825, ch. 205, sec. 8, which requires a deed from the insolvent to the provisional trustee of *all his estate, both real and personal.* Then the act of 1829, ch. 208, sec. 3, which *vests* in the provisional trustee, when he has filed his bond, "all the estate, property, effects, rights and claims of the insolvent debtor," and enacts that his appointment and bonding "shall operate as an authority to such trustee or trustees to take possession, for the benefit of the creditors of such insolvent, of all property, estate and effects, books, papers, accounts, bonds, notes and evidences of debt of such insolvent, without the necessity of such insolvent's executing a deed thereof, and to entitle such trustee or trustees *to use all legal means for the recovery thereof.*" These various acts are all to be construed together, and they clearly intended to give the provisional trustee as full and ample powers to sue for and recover property fraudulently conveyed away by the insolvent, as to the permanent trustee. On this point see 5 *H. & J.*, 408, *Kennedy vs. Boggs.* 2 *Daniel's Ch. Pr.*, 739. 7 *G. & J.*, 20, 43, *Cole vs. Hebb.* 9 *Pick.*, 212, 246, 247, *Farnam vs. Brooks.* 9 *Greenlf.*, 131, *Cole vs. McGlathry.* 1 *Md. Rep.*, 471, 472,

*Waters vs. Dashiell.* 2 *H. & G.*, 26, 27, 28, *Brown vs. Brice,* and *Act of* 1834, *ch.* 293, *sec.* 5. We therefore insist, that the *first plea* was a complete bar to the complainant's bill.

3rd. The questions arising upon the *second plea,* which was sustained by the court below, relate, 1st, to the form of the bill and its allegations. As to this the defendant insists, that the bill is simply one to vacate a transaction void by the insolvent laws, and only asking for an account and delivery of the balance as subordinate to that design. The case of *Alexander vs. Ghiselin* only decides, that all the property to which the insolvent had the *right of possession* was transferred to his trustee, but it never decided that property deposited as security, apart from all fraud, could be taken possession of by the trustee. The bill therefore does not properly seek relief upon this transfer as a *valid mortgage.* It asks that the preference may be *set aside* as *fraudulent,* and because it calls for an account it is said to be a bill to *redeem a mortgage.* In such a bill as that there would be a tender of the *debts due,* and a bill which sets up a *fraud* as the ground of relief cannot be *tortured* into a bill for the redemption of a *valid mortgage.* 22 *Eng. Ch. Rep.,* 257, 258, *Ferraby vs. Hobson.* *Ibid.,* 322, *Glascott vs. Lang.* 7 *Eng. Law & Eq. Rep.,* 259, 260, *Price vs. Berrington.* 2 *Rhode Island Rep.,* 129, 132, *Mt. Vernon Bank vs. Stone.* *Story's Eq. Pl.,* secs. 27, 36, 251, and *note* 2. 16 *Pet.,* 195, *Hobson vs. McArthur.* 6 *H. & J.,* 29, *Chalmers vs. Chambers.* 1 *Daniel's Ch. Pr.,* 412, (*note* 11,) 425, 426, 437, 438. This bill then is nothing but a bill to set aside an undue and improper preference under the act of 1834. All its allegations are to this point and it cannot, because it asks for an account, be treated as a bill for an account simply. The bill contains no charge that the transfer was fraudulent *at common law.* 2nd. But suppose the bill distinctly stated the three propositions:—1st, that the preference was fraudulent and ought to be set aside; 2nd, that the trustee was entitled to the funds in order for distribution, subject to liens and agreements to pay the defendant, and 3rd, that he was entitled to the surplus, treating the case as a mortgage, how then would

Teackle, Trustee of Carey, Wethered & Co., *vs.* Gibson.

the case stand? In such case the bill must advise the party of the alternative aspect of the case, so that he may answer, reply or plead. But no such case is presented by this bill, and if it was, the bill would still have been properly dismissed, because the purposes are wholly inconsistent and the double aspect would not help the case. 4 *G. & J.*, 444, *Burch vs. The State*. 6 *G. & J.*, 231, *State vs. Bank of Maryland. Ibid.*, 188, *Evans vs. Iglehart. Story's Eq. Pl.*, secs. 245, 246, 249, 251, 254. 2 *Md. Rep.*, 37, *McElderry vs. Shipley*. 2 *H. & G.*, 41, *Lowry vs. Tiernan*. 17 *How.*, 143, 144, *Shields vs. Barrow*. 1 *Daniel's Ch. Pr.*, 463. *Acts of* 1816, *ch.* 221, *sec.* 6; 1812, *ch.* 77, *sec.* 1, and 1834, *ch.* 293. 7 *Gill*, 404, 405, *Gardner vs. Lewis*. 4 *Md. Rep.*, 360, 361, *Mayor & C. C. of Balto. vs. Norman*. If the assignee of a bankrupt deals with a party who has intermeddled with the assets, he waives the fraud and cannot treat him as a wrongdoer. 7 *Md. Rep.*, 272, *Lanahan vs. Latrobe*. 14 *Eng. C. L. Rep.*, 50, *Brewer vs. Sparrow*. 28 *Do.*, 29, *Campbell vs. Fleming*. See also on this point 6 *H. & J.*, 266, *Harding vs. Stevenson*. 12 *How.*, 83, *Harris vs. Runnels*. 1 *Pet.*, 43, 44, *Gaither vs. Farmers & Mechanics Bank*. *Chitty on Bills*, 82, 91. 2 *Pet.*, 539, *Bank of U. S. vs. Owens*. 7 *Gill*, 481, *Albert & Wife, vs. Winn & Ross*. 2 *Starkie on Ev.*, 478.

4th. There was adequate remedy *at law*, and therefore the bill was properly dismissed. The violation of a statute is *no fraud*. The act of 1834 merely says, that such transfers as were before its enactment *valid* shall be *void*. The trustee could clearly have maintained *trover* for the bonds, notes and goods transferred. Equity had therefore no jurisdiction in the case. 7 *G. & J.*, 170, *Dulaney vs. Hoffman*. 3 *Md. Rep.*, 383, *Hertle vs. McDonald*. 11 *G. & J.*, 443, 444, *Oliver vs. Palmer*. 7 *G. & J.*, 117, 120, *Adair vs. Winchester*. 1 *Story's Eq.*, secs. 76, 79. 12 *Georgia Rep.*, 9, *Bowen vs. Johnson*. 9 *Metcalf*, 470, *Thayer vs. Smith*. 7 *Cushing*, 181, *Woodman vs. Saltonstall*. 8 *Ala. Rep.*, 743, *Knotts vs. Tarver*. 1 *Kelly*, 376, *McLaren vs. Steapp*. 12 *G. & J.*, 480, *Richardson vs. Stillinger*. 4 *H. & J.*, 46, *Taylor vs.*

11    v.8

Teackle, Trustee of Carey, Wethered & Co., vs. Gibson.

*Ferguson.* 1 *H. & G.*, 221, *Drury vs. Conner.* 2 *H. & G.*, 41, *Lowery vs. Tiernan.* 5 *Sandford*, 205, 207, *N. A. Fire Ins. Co. vs. Graham. Act of* 1801, *ch.* 74, *sec.* 6. The act of 1841, ch. 163, applies only to appeals by *defendants*, and therefore does not prevent this point from being considered in this case upon this appeal by the complainant.

5th. As to the question of limitations, the defendant insists that the general plea of limitations is a good bar. The creditors cannot pursue the property thus fraudulently as is alleged transferred. The trustee alone can do it. The plea of limitations then must be directed against him alone, and the question then is, when did the right of action accrue to him? The transfer being fraudulent it accrued *immediately* and the statute began to run from that time. The trustee's right to sue vested immediately upon his bonding, and the possession of the defendant from that moment as against him was *tortious.* As against this right of the trustee we plead the statute of limitations, and we say it is a flat bar. . At law there are no exceptions to be engrafted upon the statute except those found in the act itself, of 1715, ch. 23. Nor is there any difference between a court of equity and a court of law in this respect. In cases of concurrent remedy equity *follows* and *obeys* the law. 3 *Md. Rep.*, 383, *Hertle vs. McDonald.* 6 *Md. Rep.*, 336, *McDowell vs. Goldsmith.* 3 *Gill*, 161, 164, *Dugan vs. Gittings.* 11 *G. & J.*, 372, *Abell vs. Harris.* 7 *Gill*, 76, *Sindall vs. Campbell.* 8 *Yerg.*, 241, *Walker vs. Smith.* 9 *Pick.*, 212, 246, 247, *Farnam vs. Brooks.* 5 *Barbour*, 393, *Bucklin vs. Ford.* 1 *Law Lib.*, 28, *Wilkinson on Limitations.* 1 *Gill*, 248, *Berry vs. Pierson.* 2 *G. & J.*, 310, *Watkins vs. Harwood.* 8 *G. & J.*, 468, *Planters Bank vs. Farmers Bank.* 2 *Daniel's Ch. Pr.*, 735, 736, 739. *Story's Eq. Pl.*, secs. 753, 754. *Chitty on Cont.*, 817. 24 *Wend.*, 602, 603, 606, 607, 608, *Humbert vs. Trinity Church.* 8 *Gill*, 331, *Negro Franklin vs. Waters.* 10 *G. & J.*, 225, *Tiernan vs. Rescaniere.* 5 *Mason*, 152, 153, 155, *Sherwood vs. Sutton.* 17 *Wend.*, 202, *Allen vs. Mille. Douglas*, 655, *Bree vs. Holbech.* 2 *Younge & Col.*, 58, *Brooksbank vs. Smith.* 1 *Story's Eq.*, sec. 78. 5 *Mees. & Wels.*, 117, *Browning vs.*

*Paris.* 22 *Ala. Rep.*, 631, *Newcombe vs. Leavitt.* 26 *Eng. Law & Eq. Rep.*, 428, *Imperial Gas-light Co. vs. London Gas-light Co.*

6th. The next question is, has the amended bill made any difference in the case? We say it has not, because fraud or ignorance makes no defence in cases where the remedy is concurrent at law and in equity. The question simply is, did a right of action accrue or exist for three years before the filing of the bill. If the amendment avails any thing, it changes the case to one of *exclusive* jurisdiction *in equity*, and this cannot be done by *amendment*, for it in effect makes a new case. 17 *How.*, 144, *Shields vs. Barrow.* 10 *Pick.*, 128, *Pratt vs. Bacon.* 1 *Eng. Cond. Ch. Rep.*, 323, *Taylor vs. Shaw.* 22 *Do.*, 408, 409, 410, *Watts vs. Hyde.* 7 *How.*, 828, *Stearns vs. Paige.* 4 *Paige*, 538, *Lloyd vs. Brewster.* 1 *Johns. Ch. Rep.*, 187, *Lyon vs. Talmadge.* 3 *Do.*, 423, *Shephard vs. Merrill.* 14 *Pet.*, 160, *Walden vs. Bodley.* 16 *Wend.*, 476, 477, *McCrea vs. Purmort.* 5 *Mason*, 112, 113, *Pratt vs. Northam.* But the amendment at last brings the case to a simple one of *ignorance of rights*, which is no bar to the running of the statute. It is simply a sheer case of igno_ rance on the part of the complainant, without any fraud or concealment on the part of the defendant. In such cases *ignorance* is no bar to the plea of limitations. 11 *G. & J.*, 372, *Abell vs. Harris.* 24 *Wend.*, 605, 606, *Humbert vs. Trinity Church.* 2 *Jac. & Walk.*, 139, 142, *Cholmondeley vs. Clinton.* 1 *Eng. Law & Eq. Rep.*, 48, 49, *East India Co. vs. Paul.* In those States where fraud is held a good reply to the plea of limitations, it is held that the fraud must be the fraud of the *defendant.* 3 *Greenlf's Rep.*, 405, *Bishop vs. Little.* 9 *Do.*, 131, *Cole vs. McGlathry.* If this be so the statute will run down to the time of the filing of the amendment introducing new matter. 3 *Iredell's Ch. Rep.*, 535, 542, 543, *Christmas vs. Mitchell.* 1 *McLean*, 85, 86, *Miller vs. McIntire.* 1 *Daniel Ch. Pr.*, 455, and notes. *Douglas*, 655, *Bree vs. Holbech.* 2 *Md. Ch. Dec.*, 391, *McDowell vs. Goldsmith.* We therefore insist:—1st, that the complainant should not have been allowed to amend his bill as he did

after hearing of the pleas of the defendant; 2nd, that the amendment was not sufficient in law after the pleas filed by the defendant; and 3rd, that, at all events, the amendment extended the limitation down to the time of applying therefor, on the 14th of February 1853.

7th. That the pleas were not too wide and did not need the support of an answer, see *Story's Eq. Pl.*, secs. 751, 753, 754. 1 *Daniel's Ch. Pr.*, 598, note 2. 6 *Pet.*, 326, New Jersey *vs.* New York. 8 *How.*, 222, Maxwell *vs.* Kennedy.

MASON, J., delivered the opinion of this court.

Many grave and important questions have been discussed with much ability by counsel in the progress of their argument, which we think the exigencies of this case do not require us to determine upon the present appeal.

Whatever force there would have been in the suggestion, if made at the proper time, that a court of equity had no original jurisdiction over this case, it is now too late for us to entertain such an objection, inasmuch as none was taken, as required by the act of 1841, chap. 163, in the court below. By that act it is provided, that the defendant shall not, in the Court of Appeals, rely upon any objection to the jurisdiction of the court below, unless it appear by the record, that such objection was raised below.

The appellant as permanent trustee in insolvency of Carey, Wethered and O'Donnell, on the 8th of December 1850, filed his bill in equity, making substantially the following case: that the firm above named became embarrassed in 1839; and being absolutely insolvent in the following year, with full knowledge of their condition, transferred large sums of money and other property, constituting nearly the whole assets of the firm, to several preferred creditors. That Gibson, the defendant, received of such assets more than $18,000, which sum exceeded his claim against the firm, and his liabilities for them; that at the time of the said transfer the firm was utterly insolvent, and Gibson knew of such condition; that the several members of the firm applied for the benefit of the insolvent laws in 1841, and that the appellant became permanent trustee for all the parties, on the 23rd of October 1846; that Gibson

has never accounted for any of the assets which came into his hands, &c.

Subsequently, by an amended bill, it was further alleged, that after the assignment to Gibson the insolvents made a deed to Hinkley and Woodward, dated September 24th, 1840, embracing the balance of their assets and property, and under which deed the grantees took possession of the books and papers of the firm. Upon a bill filed in equity by the permanent trustee to vacate this deed, a decree was passed 12th of July 1848, vacating the deed and transferring the property, books and papers of the insolvent, embraced by said deed, to the trustee. From these books he discovered, for the first time, the transfers above mentioned to the present defendant, and that he had no other means of ascertaining the fact. The prayers of the bill were for a discovery, an account, and for a delivery of the assets in the defendant's possession to the complainant, and for general relief, &c.

The defendant pleaded two pleas of limitation, namely:

1. That Hinkley was appointed provisional trustee of Carey on the 12th of January 1841; and of Wethered on the 13th of August 1841 ; and Horsey became provisional trustee of O'Donnell on the 13th of July 1841; and that the cause of action accrued to Hinkley, as provisional trustee of Carey, Wethered & Co.; and to Horsey, as provisional trustee of O'Donnell, more than three years before *bill filed*, or before *serving or suing* out process, and also more than three years before the appointment of complainant as permanent trustee; nor did the defendant promise within three years before *bill filed*, or process *served* or *issued*, nor either when or since the provisional trustees were in office, to account or make satisfaction for any matters in the bill.

2. That the cause of action accrued to the complainant more than three years before bill filed, or before serving or suing out process; and defendant did not promise complainant to account for, or pay any thing for any matter charged in the bill.

The court overruled the *first* and sustained the *second* plea, and dismissed the bill. Both parties it seems appealed from this decision.

Without inquiring into the regularity of the appeal of the defendant, because of the circumstance that the decree was in his favor, the court is nevertheless of opinion, that all the advantages which he seeks under his appeal can be attained under the complainant's appeal. The question presented upon the appeal regularly before us is, whether the decree dismissing the bill was properly passed? and if either of the defendant's pleas presents a good ground of defence to the case as made by the complainant's bill, the decree must be affirmed, and it matters not upon which plea the court below based the dismissal of the bill.

The *second plea*, in its connection with the amended bill, raises the question, in addition to the question of the general inapplicability of either plea to this particular transaction, whether the three years' limitation began to run from the appointment and qualification of the permanent trustee, or from the time the fact of the alleged fraudulent transfer to Gibson came to his knowledge? This is a most important question, and one by no means free from difficulty, but as it does not enter into the first plea, and as the court have no difficulty in determining that that plea was improperly overruled, we are relieved from the necessity of deciding the question upon this appeal.

It is not charged in the bill that the provisional trustees had no knowledge of this alleged fraudulent transaction. Indeed such a theory is expressly negatived by the fact that Hinkley, who was the provisional trustee of two of the three insolvents, was also one of the grantees of the deed, under which the possession of the books and papers of the insolvent firm passed to him, and from which knowledge of the transfer was to be acquired.

The two remaining questions presented by the first plea, which we are required to determine, are, first, does the present proceeding disclose such a transaction or trust to which the plea of limitations would be inapplicable? and if not, then, secondly, does the insolvent system of Baltimore city confer power upon the provisional trustee to sue in such a case as the present, and thereby bring him and the creditors he represents

within the operation of the statute of limitations, which statute begins to run from the time the cause of action accrued, provided there is no disability existing at the time in the party entitled to sue ?

It is certain upon the facts disclosed by the bill, that an action or actions at law would have been maintained by which the relief now sought could have been fully secured, whether equity possesses concurrent jurisdiction or not. This being conceded, it has been settled by this court, that in all cases of concurrent jurisdiction, between courts of law and equity, the statute of limitations is equally obligatory in each court. *Watkins vs. Harwood,* 2 *G. & J.,* 307. *Dugan vs. Gittings,* 3 *Gill,* 161. *Hertle vs. Schwartze,* 3 *Md. Rep.,* 383.

We think this principle disposes of the first objection taken to this plea of limitations.

Next, as to the second point, namely, the right of the provisional trustee to sue. True it is, that the case of *Kennedy vs. Boggs,* 5 *H. & G.,* 403, expressly decided, that the act of 1816, chap. 221, the act under which the local system of insolvency for Baltimore city was created, did not confer any power upon the provisional trustee to sue for the recovery of the property of the insolvent from third parties, and if the legislation upon this subject had rested here, we would have had no difficulty in sustaining the views of the appellant upon this point. But to meet a case like the present it would seem that the act of 1829, chap. 208, was enacted. By the third section of that act, in express terms, the right to the possession of all the property, &c., of the insolvent, is conferred upon the provisional trustee, with power "to use all legal means for the recovery thereof." Under this act there is no room to doubt that there was full power in the provisional trustees to sue in this case as fully as the permanent trustee, and that limitations began to run against them from the time of their appointment and qualification as such, and when once commenced limitations continued to run against, also, the permanent trustee.

For the reasons assigned we regard the plea of limitations as a flat bar to a recovery in this proceeding, and therefore affirm the decree.

*Decree affirmed.*